# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**KENYARDA GRAHAM**                                                                 **PLAINTIFF**

**V.**                                                                 **NO. 4:18-CV-4-DMB-JMV**

**CITY OF CLEVELAND, MISSISSIPPI, et al.**                              **DEFENDANTS**

## ORDER

This civil rights action is before the Court on the motion to dismiss filed by the City of Cleveland, Mississippi; Charles Bingham; Bryan Bracey; and Ronnie Livingston. Doc. #8.

## I
### Procedural History

On January 17, 2018, Kenyarda Graham filed a complaint in this Court against (1) the City of Cleveland, Mississippi; (2) Charles Bingham, in his individual capacity and official capacity as Chief of the Cleveland Police Department ("CPD"); (3) Bolivar County, Mississippi; (4) Kelvin Williams, in his individual capacity and official capacity as Sheriff of Bolivar County; (5) Bryan Bracey, in his individual capacity and official capacity as a CPD officer; (6) Demarcus Johnson, in his individual capacity and official capacity as a CPD officer; (7) Sandra Lomax, in her individual capacity and official capacity as a CPD officer; (8) Ronnie Livingston, in his individual capacity and official capacity as a CPD officer; (9) Latoya Barnes, in her individual capacity and official capacity as an employee of the Bolivar County Regional Corrections Facility ("BCRCF"); (10) Timothy Shaw, in his individual capacity and official capacity as a BCRCF employee; (11) Ollie Hall, in his individual capacity and official capacity as a BCRCF employee; (12) Malcolm Wesley, in his individual capacity and official capacity as a BCRCF employee; (13) Ladester Green, in his individual capacity and official capacity as a BCRCF employee; and (14) Mose

Countryman, in his individual capacity and official capacity as a BCRCF employee. Doc. #1. The complaint alleges claims for violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983.

On April 6, 2018, the City, Bingham, Bracey, and Livingston filed a "Motion to Dismiss or, Alternatively, for Summary Judgment." Doc. #8. Lomax, who was not served with the complaint until March 30, 2018, joined the motion on April 19, 2018. Docs. #12, #21. After seeking and receiving an extension to respond, Graham filed a response to the motion on April 30, 2018. Docs. #20, #23. The moving defendants replied on May 7, 2018. Doc. #25.

**II**
**Motion to Dismiss Standard**[1]

Federal Rule of Civil Procedure 8 "requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal quotation marks and alteration omitted). "Although Rule 8 and—in specific circumstances—Rule 9 provide the statutory component of the federal pleading standard, Rule 12(b)(6) provides the one and only method for testing whether that standard has been met." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016).

"To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz*

---

[1] Though the motion's prayer for relief asks for only summary judgment relief, the memorandum brief makes clear that the primary relief sought is dismissal, rather than summary judgment. *See* Doc. #9 at 14 ("Assuming for sake of argument the City Officers and Chief Bingham are not afforded qualified immunity, these Defendants along with the City of Cleveland are still entitled to summary judgment."). Accordingly, the Court addresses the primary request for relief first.

*v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). Under this standard, a court must "accept all well-pleaded facts as true …." *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199 (5th Cir. 2016) (internal quotation marks omitted).

## III
## Factual Allegations

Early in the morning of July 4, 2016, the CPD was informed that Kenyarda Graham "was in the street, in his underwear being loud and disorderly …." Doc. #1 at ¶ 13. Sergeant Ronnie Livingston and Officers Bryan Bracey, Sandra Lomax, and Demarcus Johnson arrived on the scene and placed Graham under arrest for disturbing the peace and malicious mischief. *Id*. The officers involved in the arrest knew that Graham suffered from a mental illness for which he had been hospitalized and for which he takes medication. *Id*. at ¶¶ 12, 13.

At the time of Graham's arrest, the CPD maintained a policy governing responses to "situations involving mentally ill persons …." Doc. #23-5.[2] This policy provided:

> When a mentally ill person's behavior requires confinement in order to prevent him from harming himself, another person, or committing a crime, the officer will:
>
> 1. Obtain a warrant of commitment;
> 2. Take the individual into custody and immediately transport him to the nearest mental hospital; and
> 3. Present the warrant of commitment to the hospital authorities, make application for emergency admission and turn the person over to hospital authorities.
>
> However, if an officer has no time to obtain a commitment warrant and must act immediately in order to prevent personal injury or extensive property damage, the officer will:
>
> 1. Immediately arrest the individual for any criminal conduct which he has committed including disorderly conduct and threats;

---

[2] In ruling on a motion to dismiss, the Court may consider documents referenced in the complaint and which are central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."). There is no dispute that the relevant policy satisfies these requirements.

3

> 2. Immediately present the matter to a magistrate and seek an emergency commitment warrant;
> 3. Transport the individual to the nearest mental hospital, present the warrant to hospital authorities, make an application for emergency admission, and leave the individual with hospital authorities;
> 4. Notify the prosecutor that the individual has been committed.

*Id*.

Graham was taken to the Cleveland Police Department and was booked at approximately 4:00 a.m. Doc. #1 at ¶ 13. Approximately ten minutes later, Graham, pursuant to a contractual agreement between Bolivar County and the City, was booked into the Bolivar County Regional Correctional Facility and placed in the "drunk tank," a cell with a bed and a hole in the floor for waste.[3] *Id*. at ¶ 15. At some point on the day of booking, Graham began crawling around the floor of the cell on his hands and knees. *Id*. at ¶ 19. At an unknown time, Graham tore the mattress, tore off his clothes, and spread feces on the walls and floor. *Id*. Graham alleges that "all named" defendants including Bingham, the Chief of the CPD, "were aware of his conduct and condition, [but] refused to provide treatment and took no action." *Id*.

Graham was evaluated by a "mental health professional" for a mental health commitment on July 12, 2016, and was the subject of a commitment proceeding the next day. *Id*. at ¶ 17. After the proceeding, Graham was officially committed to the State Mental Hospital in Whitfield. *Id*.

For unknown reasons, Graham was transported back to the detox cell, where he remained until July 24, 2016, when he was found by corrections officer Malcolm Wesley face down over the waste hole. *Id*. at ¶¶ 18, 20. Graham was transported to the Bolivar County Medical Center where he was treated for infected knee wounds, sepsis, and rhabdomyolysis. *Id*. at ¶¶ 20–21. Graham was then transferred to Allegiance Hospital, a long-term acute care hospital. *Id*. at ¶ 21.

---

[3] The BCRCF manual "required an initial screening of inmates and the provision of mental health services …." *Id*. at ¶ 17. It is unclear whether this initial screening occurred.

Immediately after admission to Allegiance, Graham was transferred to Delta Regional Medical Center, where he was diagnosed with Methicillin-resistant Staphylococcus aureus infections in both knees and "cellulitis with gas forming organisms." *Id*. Eventually, Graham was transferred to the University of Mississippi Medical Center, where he underwent plastic surgery and debridement of his knees. *Id*. Graham required extensive physical therapy to walk again and is permanently scarred on his legs. *Id*.

## IV
## Analysis

The arresting officers and Bingham seek dismissal under the doctrine of qualified immunity. The City seeks dismissal based on the absence of wrongful conduct on the part of its officers.

### A. Arresting Officers

"To state a claim under Section 1983, a plaintiff must assert facts to support that a person acting under color of state law denied the plaintiff a right under the Constitution or federal law." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016). "When a government official is sued under Section 1983, the plaintiff must allege that the official was either personally involved in the deprivation or that his wrongful actions were causally connected to it." *Id*. (internal quotation marks omitted). Even when a § 1983 cause of action exists, "[t]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *McLin v. Ard*, 866 866 F.3d 682, 688–89 (5th Cir. 2017). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Graham argues that "he was subjected to cruel and unusual punishment without due process by the Defendants' failure to screen him and/or insure that he was screened and provided mental health care." Doc. #24 at 15. In considering Graham's argument, the Court begins by noting that the failure to follow a relevant policy does not, standing alone, establish a violation of a constitutional right. *See Lewis v. Sec. of Pub. Safety & Corrs.*, 870 F.3d 365, 369 (5th Cir. 2017) ("[A] prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right."). Accordingly, even if the arresting officers failed to follow the City's policy regarding screening arrestees, that fact alone would not establish the violation of a constitutional right. *See id*.

Turning to the substance of the allegations against the arresting officers, Graham seems to argue that the arresting officers violated his right to adequate medical treatment by taking him to the jail instead of a mental health facility and by failing to take corrective action once his health deteriorated during incarceration.

"[A]n arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996); *see Hill v. Carroll Cty.*, 587 F.3d 230, 237 (5th Cir. 2009) (failure to monitor arrestee claim sounded "not in the Fourth Amendment but in the Fourteenth"). The Fourteenth Amendment guarantees detainees the right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). "An official is deliberately indifferent if he or she both knows of an excessive risk of harm and disregards that risk." *Perniciaro v. Lea*, 901 F.3d 241, 257 (5th Cir. 2018). The knowledge requirement "requires that an official is both aware of facts from which an inference of harm could be drawn and actually draws that inference." *Id*. Even when knowledge is present,

the officer "may still be free from liability if he or she responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* (internal quotation marks omitted).

The allegation related to failure to take corrective action based on knowledge of the County officers' treatment of Graham may be easily disposed of because there is no allegation that the CPD generally, or the arresting officers specifically, are or were involved with the administration of the County's jail. Accordingly, they were neither personally involved in the jail's alleged deprivation of Graham's rights nor causally connected to such a deprivation.[4] *See Newberry v. Melton*, 726 F. App'x 290, 295 (6th Cir. 2018) ("Melton was not responsible for patrolling the prison and assisting prisoners in need, so his failure to physically assist Newberry cannot be a basis for liability."); *Newsome v. Webster*, 843 F.Supp. 1460, 1469 (S.D. Ga. 1994) ("Knox's denial of medical treatment claim is equally baseless. Stahler, the arresting officer, had nothing to do with Knox's medical care at the jail and as a matter of law would not be accountable under § 1983 had she been denied proper medical care.").

As for the officers' conduct at the scene, while Graham alleges the officers were aware of his general mental health history, he points to nothing in that history which would have alerted the officers to an excessive risk of harm or to anything which would have rendered booking into the jail, an institution with its own mental health screening procedure,[5] an unconstitutional disregard of such a risk. Even if such an action could rise to the level of a constitutional deprivation, Graham has cited no authority which would have placed the arresting officers on notice that their actions

---

[4] While there may be a causal connection between the arresting officers' failure to adequately screen and Graham's ultimate injuries, there is no connection alleged between the arresting officers' and the *jail employee's* alleged violations.

[5] Doc. #1 at ¶ 17.

were violating Graham's rights. For these reasons, the arresting officers are entitled to qualified immunity and their motion to dismiss will be granted.

## B. Bingham

Bingham argues that he "should enjoy qualified immunity when there has been no allegation the Chief was personally involved in the confinement of Graham or treatment of Graham post-confinement." Doc. #9 at 13. In his complaint, Graham alleges Bingham is liable because he oversaw a practice of disregarding the City's policies regarding arrests of mentally disturbed individuals. Doc. #1 at ¶ 23. Graham also appears to argue Bingham was deliberately indifferent for failing to act despite knowledge of Graham's deteriorating condition. Doc.# 24 at 19.[6]

First, a supervisor cannot be liable for a failure to train (or oversee) when there is no underlying constitutional violation on the part of a subordinate. *Tamez v. Manthey*, 589 F.3d 764, 772 (5th Cir. 2009) ("[S]upervisor liability requires an underlying constitutional violation before such liability can be imposed."); *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) ("Because these administrators had no supervisory authority over the police who allegedly committed the violations, they did not participate in or cause such violations. They cannot be supervisors of persons beyond their control.") (citation omitted). Because Graham did not plead the existence of a constitutional violation of anyone under Bingham's supervision,[7] his supervisory liability claim against Bingham must also fail. Furthermore, a failure to act will not rise to the level of deliberate indifference when the official has no authority to do so.[8] *See, e.g., Thayer v.*

---

[6] Graham also cites allegations not in the complaint. *See* Doc. #24 at 18–19.

[7] There is no allegation that Bingham has any supervisory authority over anyone in the County jail.

[8] An exception to this rule exists where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). However, this liability does not "attach where an officer is not present at the scene of the constitutional violation." *Id*. Even assuming Bingham had a reasonable opportunity to prevent the harm at issue, there is no allegation that he was at the scene of the alleged violation at the jail.

*Adams*, 364 F. App'x 883, 891 (5th Cir. 2010) ("Thayer says Flisowski and Gonzales denied him treatment and ignored his complaints of pain. However, they had no authority to prescribe drugs or embark on a different course of treatment."). As explained above, there is no allegation that Bingham had any authority over Graham's treatment at the jail. In the absence of such an allegation, the Court cannot conclude that Bingham was deliberately indifferent. Accordingly, Graham cannot show a constitutional violation on the part of Bingham.

### C. City of Cleveland

Municipalities such as the City "may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017). Rather, "municipal liability for constitutional torts arises when the execution of an official policy causes the plaintiff's injury." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). As with supervisory liability, municipal liability requires an underlying constitutional violation. To the extent Graham has established no constitutional violation attributable to the City, his claims against the City fail.[9]

### V
### Conclusion

The motion to dismiss [8] is **GRANTED**[10] and the claims brought against the City,[11] Bingham, Bracey, Lomax, and Livingston are **DISMISSED without prejudice** for failure to state a claim.

---

[9] To the extent Graham attempts to hold the City liable for the conduct of the County employees, such claim must also fail. *See Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 321–22 (4th Cir. 2009) (County improper defendant where it "did not supervise the individual defendants nor did it make policy for [the relevant entity]").

[10] Having granted the primary relief sough in the motion, the Court declines to consider the alternative requested relief of summary judgment.

[11] To the extent the claims against the City fail, the claims brought against the city officials in their official capacities must also fail. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

**SO ORDERED**, this 27th day of March, 2019.

                                                **/s/Debra M. Brown**
                                                **UNITED STATES DISTRICT JUDGE**